IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARDIONET, INC., et al.,      :      CIVIL ACTION
                              :      NO. 13-191
          Plaintiffs,         :
                              :
     v.                       :
                              :
CIGNA HEALTH CORP.,           :
                              :
          Defendant.          :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MAY 23, 2013


I.        BACKGROUND[1]

          Plaintiffs CardioNet, Inc. ("CardioNet") and LifeWatch

Services, Inc. ("LifeWatch") are the leading suppliers of

outpatient cardiac telemetry ("OCT") services. Compl. ¶ 1. OCT

is a real-time, physician-prescribed, cardiac event monitoring

service for patients experiencing symptoms of atrial

fibrillation that evade detection through the use of shorter

term monitoring technology. Compl. ¶¶ 20-26. Defendant, CIGNA

Health Corporation ("CIGNA"), issued numerous coverage policies

between 2007 and 2011 affirming that "there is sufficient

---

[1]       In accordance with the appropriate standard of review,
see infra Part II, the Court takes the facts in this section
from Plaintiffs' Complaint and construes them in the light most
favorable to Plaintiffs.

evidence in the published peer reviewed literature supporting the use of [OCT services]" for diagnosing dangerous arrhythmias that "pose a significant health risk" and which escape early detection through other cardiac diagnostic tests. Compl. ¶¶ 56-60.

Plaintiffs each became CIGNA in-network providers by entering into an Administrative Services Agreement ("ASA") with CIGNA in 2007. Compl. ¶¶ 46-47. Each ASA includes a negotiated rate for each Plaintiff's OCT services. Pl.'s Resp. 2, ECF No. 9. Plaintiffs are not, however, automatically entitled under the terms of the ASAs to be paid for OCT services furnished to CIGNA patients. Id. Instead, Plaintiffs' services are reimbursable only when they are considered "Covered Services," which are defined as: "Those health care services for which a Participant is entitled to coverage under the terms and conditions of the Participants Benefit Plan." Id. (citing ASA § 1.5).

Effective October 2012, Defendant declared, through the issuance of a 2012 Cardiac Event Monitoring Policy (the "2012 CEM Policy") that OCT services would no longer be covered because they were "experimental, investigational and unproven" ("EIU"). Compl. ¶¶ 67, 74, 75. The 2012 CEM Policy stated that CIGNA'S new policy against OCT coverage is superseded when the governing employee health benefit plan administered by CIGNA contains a less restrictive coverage provision. Id. ¶¶ 86-87.

2

For example, some plans only treat services that are not FDA approved or are used strictly for clinical trial purposes as EIU. Id.

After refusing Plaintiffs' independent requests to reconsider the pre-announced change in its OCT coverage policy, CIGNA disseminated an electronic bulletin, styled as an August 2012 Physicians Update on Cardiac Event Devices (the "Physician's Update") to hundreds of thousands of physicians who participate in CIGNA's provider network and who order, or are in a position to order, Plaintiffs' services. Id. ¶¶ 78, 80-81. The Physician's Update stated without qualification that OCT "is considered EIU" and pronounced that CIGNA would never cover OCT "for any indication." Id. ¶¶ 80-81. Plaintiffs allege that as a result of this pronouncement and the 2012 CEM Policy, OCT orders for CIGNA patients have virtually ceased, and orders for non-CIGNA patients have also been adversely effected. Pl.'s Resp. 3.

To challenge CIGNA's actions, Plaintiffs filed this suit "on their own behalf and as assignees of the rights and claims of patients." Compl. 1. The first four counts of the Complaint comprise derivative claims that seek to enforce the rights to coverage of OCT of patients from whom Plaintiffs obtained assignments of rights and legal claims. Plaintiffs seek compensatory and prospective equitable relief under Section 502(a) of the Employee Retirement Income Security Act ("ERISA")

on behalf of Plan Participants in Counts I and II. Plaintiffs also have sought injunctive relief against CIGNA as a plan fiduciary on behalf of Plan Participants under Count III. Plaintiffs assert derivative common law, breach of contract claims (under Count IV) for patients not enrolled in ERISA plans (for example, patients who are employed by state governments or instrumentalities). Plaintiffs also separately advance direct challenges to CIGNA's dissemination of misleading and injurious statements about their products and services through common law and statutory claims for tortious interference with Plaintiffs' relations with ordering physicians, violation of § 43(a) of the Lanham Act, and trade disparagement (Counts V, VI, and VII respectively).

Plaintiffs seek the following relief:

- An order requiring Defendant to pay/reimburse Plaintiffs for OCT services provided since the implementation of, and derived or not ordered as a result of the 2012 CEM Policy;

- An order enjoining CIGNA from applying the 2012 CEM Policy as a basis for denying coverage for OCT and requiring CIGNA to withdraw and rescind the 2012 CEM Policy;

- An order declaring that CIGNA shall cover OCT for the above-noted assignees and for all other participants of CIGNA's benefit plans whom OCT services are found to be medically necessary under the terms of the 2011 CEM Policy;

- An order requiring CIGNA to withdraw and rescind the Physician Updates and any other similar communications to third parties in which CIGNA has referred to OCT as experimental, investigational or unproven;

- An order requiring CIGNA to send corrective notices to all persons to whom it distributed the 2012 Physicians Updates;

- Damages in excess of $150,000, together with interest; and

- Attorney's fees and costs.

On February 13, 2013, Defendant filed a motion to compel arbitration and to dismiss the complaint, or in the alternative, to stay the action pending arbitration. ECF No. 7. Plaintiffs responded on March 25, 2013. ECF No. 9. The motion is now ripe for disposition.

## II.  LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted).  In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a

5

right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261

(3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

        Defendant argues that all of Plaintiffs' claims are within the scope of each Plaintiff's ASA, and are therefore subject to arbitration. Because the Court agrees, it will not address Defendant's other arguments.

    A.   Legal Standard

        Questions of arbitrability are presumed to be questions for judicial determination. See AT&T Techs., Inc. v. Communc'ns Workers of Am., 475 U.S. 643, 649 (1986); Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012). Before reaching the issue of whether to compel arbitration, the Court must answer two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). Here, there is no dispute that Defendant and Plaintiffs entered into valid arbitration agreements in their ASAs, so the Court turns to the second inquiry.

        The Supreme Court has stated that there is a liberal federal policy favoring arbitration and that arbitration is a

matter of contract, such that courts must enforce arbitration agreements according to their terms. AT&T Mobility L.L.C. v. Concepcion, 131 S.Ct. 1740, 1745 (2011). The Federal Arbitration Act (the "FAA") directs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); see also Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("[A]n agreement to arbitrate a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal quotations omitted).

The "presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is . . . broad." AT&T Techs, 475 U.S. at 650. "Cases holding that the arbitration clauses at issue are narrow have generally relied on expressly limiting the scope of the clause to specific subject matter." United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co., 522 F.3d 324, 331 (3d Cir. 2008); see also Local 827 v. Verizon N.J., Inc., 458 F.3d 305, 307, 311-12 (3d Cir. 2006) (finding arbitration provision to be narrow because it specifically enumerated certain articles within collective bargaining agreement subject to arbitration). Where arbitration clauses do not explicitly foreclose the range of arbitrable

8

subject matter, courts tend to find that they are broad. <u>See,
e.g.</u>, <u>Lukens Steel co. v. United Steelworkers of America (AFL-
CIO)</u>, 989 F.2d 668, 673 (3d Cir. 1993) (finding arbitration
provision to be broad where it called for arbitration "[s]hould
any differences arise as to the meaning and application of, or
compliance with, the provisions of this Agreement"); <u>E.M.
Diagnostic Sys., Inc. v. Local 169</u>, 812 F.2d 91, 92 (3d Cir.
1987) (holding that arbitration clause was broad where it called
for arbitration of "any dispute arising out of a claimed
violation of this Agreement").

     B.   <u>The Arbitration Clause</u>

     The relevant arbitration clause in this case is found
in Plaintiffs' ASAs with CIGNA, which make Plaintiffs in-network
providers for participants in CIGNA health plans or employer
health plans administered by CIGNA ("participants"). Compl. ¶¶
46, 47, 53. Pursuant to the ASAs, Plaintiffs receive payment
directly from CIGNA when they provide participants medically
necessary services that are of a type covered under the terms
and conditions of a participant's benefit plan. <u>Id.</u> ¶¶ 49, 53.
The ASAs provide, with respect to disputes between Plaintiffs
and Defendant:

> 6.3 <u>Internal Dispute Resolution</u>. Disputes that might
> arise between the parties regarding the performance or
> interpretation of the Agreement must first be resolved
> through the applicable internal dispute resolution

process outlined in the Administrative Guidelines. In
the event the dispute is not resolved through that
process, either party can request in writing that the
parties attempt in good faith to resolve the dispute
promptly by negotiation between designated
representatives of the parties who have authority to
settle the dispute. If the matter is not resolved
within 60 days of such request, either party may
initiate arbitration by providing written notice to
the other. With respect to a payment or termination
dispute, Provider must submit a request for
arbitration within 12 months of the date of the letter
communicating the final decision under CIGNA's
internal dispute resolution process unless applicable
law specifically requires a longer time period to
request arbitration . . .

6.4 <u>Arbitration</u>. If the dispute is not resolved
through CIGNA's internal dispute resolution process,
either party can initiate arbitration by providing
written notice to the other. If one of the parties
initiates arbitration, the proceeding will be held in
the jurisdiction of the Provider's domicile . . .
<u>Arbitration is the exclusive remedy for resolutions of
disputes under this Agreement</u>. The decision of the
arbitrator will be final, conclusive and binding, and
no action at law or in equity may be instituted by
CIGNA or Provider other than to enforce the award of
the arbitrator . . . .

Def.'s Mot. to Compel Arb. or Dismiss (hereinafter "Def.'s Mot.

to Dismiss"), Ex. A, CardioNet Ancillary Servs. Agreement 6

(emphasis added), ECF No. 7.[2]

Plaintiffs argue that the scope of the arbitration

clause is governed by the language in clause 6.3 of the

contract, which states that disputes "regarding the performance

or interpretation of the Agreement" are subject to the internal

---

[2]      Identical terms appear in Plaintiff LifeWatch
Services's ASA. Def.'s Mot. to Dismiss, Ex. B.

dispute resolution process, and if still unresolved, arbitration. They argue that the clause is narrow, citing Battaglia v. McKendry, 233 F.3d 720 (3d Cir. 2000), for the claim that the Third Circuit held that an arbitration clause "limited to disputes involving the interpretation and performance" of the agreement should be construed as narrow. Pls. Resp. 26. Plaintiffs misread the holding in Battaglia.

In Battaglia, the arbitration clause subjected "any controversy [that] arises hereunder [under the Agreement]" to arbitration. 233 F.3d at 724-25. Plaintiff argued that the clause was limited to disputes involving the interpretation and performance of the agreement and not its formation. Id. at 724. The Third Circuit never classified arbitration clauses limited to the interpretation and performance of an agreement as narrow. Rather, it implied that such a clause would not cover arbitration as to the agreement's formation.

Classifying an arbitration clause as broad does not mean that absolutely any controversy is subject to arbitration. "Regardless of whether the arbitration clause is broad or narrow . . . arbitration is still a creature of contract and a court cannot call for arbitration of matters outside of the scope of the arbitration clause." United Steelworkers of Am., 522 F.3d at 332. The Third Circuit has in fact held that an arbitration clause quite similar to the one in this case, was broad. In

11

Lukens Steel v. United Steelworkers of Am. (AFL-CIO), the court
held that a clause providing for the arbitration of disputes
relating to the "meaning and application of, or compliance with,
the provisions of [the] Agreement" was broad. 989 F.2d 668, 673
(3d Cir. 1993). The arbitration clause in the instant case is
substantively identical, calling for the arbitration of disputes
related to "interpretation or performance" of the agreement.

Moreover, the next section of the agreement goes on to
state that "[a]rbitration is the exclusive remedy for
resolutions of disputes under this Agreement." This statement
confirms the Court's determination that the arbitration clause
must be construed as broad in scope, therefore creating a
presumption of arbitrability. Applying this presumption here,
which has not been rebutted by Plaintiffs, Section 6.4 of the
ASAs provides the exclusive means by which Plaintiffs may
resolve claims concerning payments for covered services and
disputes as to what services should be classified as covered.

  C.   Counts I-IV

Defendant avers that Counts I through IV of
Plaintiffs' complaint are premised on the notion that OCT
services should be considered "covered services" within the
meaning of the ASAs, and that Plaintiffs should therefore be
paid for those services. Def.'s Mot. to Dismiss 8. Defendant
argues that Counts I and IV explicitly seek payment for OCT

services Plaintiffs have provided to participants, and that Counts II and III are essentially Plaintiffs' claims for payment repackaged. Id. As such, Defendant argues that Plaintiffs' claims should be dismissed because they fall within the scope of the broad arbitration provision of the ASAs. Id. at 9. Having decided that the arbitration provision provides the exclusive remedy for Plaintiffs' claims regarding payment for covered services, the Court must now decide whether Plaintiffs are permitted to bring these very claims as assignees of the Plan Participants.

Plaintiffs emphasize that their ERISA claims under Counts I-III and their breach of contract claim under Count IV are derivative claims of third party Plan Participants and beneficiaries who are not parties to either ASA, and therefore not subject to any arbitration provision. It is well settled that an arbitration clause applies only to the parties to the agreement in which it is contained and those with whom there is privity of contract. See Invista S.A.R.L. v. Rhodia, S.A., 625 F.3d 75, 84 (3d Cir. 2010) ("[A] non-signatory cannot be bound to arbitrate unless it is bound under traditional principles of contract and agency law to be akin to a signatory of the underlying agreement.") (citing E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001)).

In the instant case, the Court finds that Plaintiffs cannot pursue the Plan Participants' claims through an assignment from the Plan Participants to Plaintiffs. Plaintiffs have a preexisting duty under their agreements with CIGNA to arbitrate disputes that are substantively identical to the claims they now seek to bring as assignees. All of Plaintiffs' claims rest on the basic argument that OCT services should be covered services and therefore should be paid for by CIGNA. This argument strikes at the heart of Plaintiffs' contracts with CIGNA, i.e., claims for payment by Plaintiffs will be subject to arbitration. Plaintiffs cannot nullify their agreements to arbitrate these claims for payment by becoming assignees of the Plan Participants' claims. Of course, the Plan Participants are free to pursue their claims independently, or via an assignment to another third party, but Plaintiffs are barred from pressing these claims as assignees due to their preexisting contractual obligations with CIGNA. If Plaintiffs wish to challenge Defendant's classification of OCT services as EIU, they must arbitrate their claims, as they had agreed to do under the ASAs.

D.   Counts V-VII

Defendant argues that Counts V through VII, which Plaintiffs bring on their own behalf, are also covered under the ASAs and therefore subject to mandatory arbitration. Def.'s Mot. to Dismiss 9. Plaintiffs again respond that the relevant

14

arbitration clauses are narrowly drawn and that Plaintiffs' claims each fall outside the scope of the clauses. Pls.' Resp. 25, ECF No. 9. The Court has already found that the relevant arbitration clauses are broad, see supra subsection III.A.2, and therefore there is a presumption of arbitration. Counts V through VII will therefore be dismissed because they are subject to the ASAs' arbitration clauses.

Plaintiffs' claims of tortious interference with business relations, violation of Section 43(a) of the Lanham Act, and trade disparagement, all turn on Defendant's decision to classify OCT services as EIU. First, Plaintiffs allege that Defendant falsely referred to OCT services as EIU. Second they argue that Defendant's 2012 Physician's Update incorrectly stated that OCT would not be covered "for any indication" when in fact the 2012 CEM Policy stated that CIGNA'S new policy against OCT coverage is superseded where the governing employee health benefit plan administered by CIGNA contains a less restrictive coverage provision. Plaintiffs claim that "CIGNA's adverse characterizations of OCT is [sic] likely to broadly deter physician orders of OCT" both for patients with CIGNA and those with other insurance plans. Compl. ¶ 180. This claim is the foundation of Counts V through VII, and clearly falls within the scope of the ASAs' arbitration clauses. To the extent that Plaintiffs disagree on whether OCT services should be classified

15

as EIU or as covered, this disagreement must be resolved under
the terms of the arbitration provision. Therefore the Court will
dismiss Counts V through VII as subject to mandatory arbitration
under the terms of the ASA.

**IV.  CONCLUSION**

In sum, the Court will grant Defendant's motion to
compel arbitration as to all counts in the complaint. An
appropriate order will follow.